ORRAN E. BOYNTON, in equity, *vs.* ROXANNA P. PAYROW, *et als.*

Lincoln. Decided December 8, 1877.

*Equity.*

A bill in equity to direct the disposition of a pledge affords a more complete remedy to the pledgee than his common law right to sell the pledge, after notice ; it concludes all the parties.

The delivery of a savings-bank book to a third person for delivery to a creditor as security for a debt will create a valid pledge of the book and deposit.

The heir cannot create a lien on the book or deposit as against the administratrix.

Such a pledge will not be sold. Unless the administratrix, within a time fixed, tenders the amount of the pledge, with interest to the date of the tender, and the costs of process, the court will appoint an officer to receive the deposit, and make proper disposition thereof.

BILL IN EQUITY, to procure the direction of the court in the disposition of a pledge of a savings-bank book, praying that the savings institution be directed to pay to the petitioner or his order all the moneys so deposited, and for further relief and costs.

*R. K. Sewall,* for the plaintiff.

*J. Baker,* for Roxanna Payrow.

BARROWS, J. Where there is a general pledge of personal property, neither the time of redemption nor the manner and time of sale being specified in the contract, it has long been held that the appropriate remedy of the pledgee, when his rights or powers are in any manner questioned or denied, is by process in equity, in which the court can make the trust available with due regard for the rights of all concerned. 2 Kent's Com. 4th ed. 581, 582, 583. 4 *id.* 138, 140. 2 Story's Eq. Jur. 9th ed. §§ 1030, 1033.

Chancellor Kent says that "where no time was limited for the redemption the pawner had his own lifetime to redeem, unless the creditor in the meantime called upon him to redeem, and if he died without such call the right to redeem descended to his personal representatives ;" that the pledgee has the election of two remedies upon the pledge itself, one of which is to file a bill in chancery and have a judicial sale; and that "the law especially

in the equity courts is vigilant and jealous in its circumspection of the conduct of trustees."

The pledgee, holding the property in trust for the benefit of himself and whomever else it may concern, may rightfully resort to the court sitting in equity to make the proper orders respecting its disposition and thereby relieve himself from ulterior questions as to the propriety of his course, to which he might subject himself if he proceeded to sell without judicial process, upon reasonable notice to the debtor to redeem. ·

In the present case the plaintiff claims that the savings-bank book which is the subject of controversy was pledged to him by his sister, Clara Boynton, to secure certain promissory notes which she gave him for money lent and which he still holds; that a few months before her death, upon her return from Massachusetts to her old home in Lincoln county, in ill health, he redelivered it to her to enable her to draw such sums from the deposit as she might need; that during her last sickness she recognized his claim upon it to secure the payment of her notes, and gave it to her mother to be delivered to him with directions to take what was due him, and use some of the money in fitting up a family burial lot with suitable monuments, and distribute the remainder to her heirs. The case shows that it was accordingly delivered to him by their mother shortly after Clara's decease, and is now in the custody of his counsel in Lincoln county. All the heirs of Clara subsequently united in a request to the savings institution to pay the money to the plaintiff in trust for them, but he did not draw it and it still remains in the savings institution. And the plaintiff claims a further lien to secure certain advances of money which he made to several of the heirs (notably to the respondent Payrow) on the strength of his possession of their order on the savings bank for the money.

The respondent, Payrow, a niece of Clara, in January, 1875, took out administration upon Clara's estate, in Lincoln county. This process was commenced returnable at the next term of this court in that county against her as administratrix, and the savings institution is made a party defendant.

The respondent, Payrow, denies the jurisdiction of the court in

Lincoln county, and the right of the plaintiff to maintain this process on the ground that he has an adequate remedy at law; and finally she denies the lien claimed by the plaintiff, or his right in any manner to withhold the possession of the bank-book and deposit from herself as the administratrix of Clara. She questions the jurisdiction of the court in Lincoln county upon the strength of her sworn answer and testimony that her residence is and has been in Boston, where the plaintiff also lives, and hence that the only party in this state is the Saco and Biddeford savings institution located in York county. But we think this objection is not maintained in point of fact, and that the plaintiff properly complained against her as resident in Jefferson. She, herself, while testifying that she has lived most of the time in Boston for twenty years past, says also that while residing in Maine, her home was at her grandmother's in Jefferson, and she describes herself as of that town in her petition for administration on Clara's estate and in her administration bond filed in probate court but a few weeks prior to the commencement of this process, and under that description she was then and subsequently prosecuting her claim to administration upon an appeal taken by this complainant.

All things considered, we think the court may well take jurisdiction of this controversy in Lincoln county.

It is clear, however, that the plaintiff can sustain no claim upon the funds deposited in the savings-bank by Clara Boynton, as against her administratrix, to secure his advances made to her heirs on the strength of their order in his favor upon the savings-bank. If he would have made that order available for such a purpose he should have acted promptly under the order, and settled his transactions with the heirs without compelling them by his delay to resort to an administration. As against an administratrix duly appointed he cannot sustain any claim to the bank-book or the money it represents by virtue of any order or assignment from the heirs.

Nor is the testimony sufficient to establish the creation of any trust for the purpose of fitting up a family burial place and distribution of residue among the heirs by the plaintiff, without the

intervention of probate proceedings. As construed by the plaintiff himself, the amount to be expended for the family cemetery and the manner of its expenditure were left to depend upon the concurrence of the heirs, and there is absolutely nothing to show a legal appropriation of the money to this object by Clara Boynton.

But we think there is a preponderance of evidence to show a renewal of the pledge of the bank-book to the complainant to secure the amount due to him from his sister for money lent. We must set aside the testimony of the complainant so far as it relates to matters occurring prior to the decease of his sister as incompetent in this suit against her administratrix. *Trowbridge* v. *Holden*, 58 Maine, 117. *Burleigh* v. *White*, 64 Maine, 23. But in the testimony of his mother and his sister, Harriet Boynton, we find enough to satisfy us that, during Clara's last illness, she gave the bank-book to her mother to be delivered to the complainant for his security. While there are some inconsistencies in the statements of the mother in her second deposition taken at the instance of the defendant, they are nothing more than might be expected from a person of her great age' when plied with leading questions after a considerable lapse of time since the transactions to which her testimony relates. We think the account first given by the mother, and confirmed by Harriet, and by existing documents and the acts of the parties concerned, is the more reliable. The delivery of the bank-book by Clara to her mother for the purpose avowed by her, makes it a good pledge to the plaintiff; and as pledgee he has the right to get the direction of the court in regard to its disposition, so as to protect the interests of all who have an interest therein. The bill is sustained with costs for complainant.

Unless the parties agree as to the amount due from Clara's estate to the plaintiff, a master will be appointed to ascertain and report it to the court.

The peculiar nature of the pledge makes a sale unnecessary. If, within three months after the amount due the complainant is ascertained, either by agreement of parties or the acceptance of a master's report, the respondent shall tender the sum fixed with

interest (if any accrues) and costs of this process, the complainant shall thereupon surrender the bank-book to the administratrix of Clara thenceforth discharged of the pledge and all claim on the part of the plaintiff thereon, except as heir of Clara. If not so tendered, an officer of the court will be appointed to receive the money from the savings-bank and dispose of it as above.

Costs of the savings institution, if any, in this process, to be paid out of the estate.

> *Bill sustained. Case remanded for further proceedings in conformity herewith.*

APPLETON, C. J., WALTON, VIRGIN, PETERS and LIBBEY, JJ., concurred.